UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**
APR 2 0 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-259-GWU

LARRY D. MYERS,                        PLAINTIFF,

VS.              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,           DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

       Step 4. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

      Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

5

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Larry D. Myers, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a small herniation at C5-6 slightly indenting the thecal sac, a slight bulge at C6-7, and mild degenerative changes in the cervical spine. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Myers retained the residual functional capacity to perform his past relevant work as a grocery store cashier and customer service clerk and, therefore, was not entitled to benefits. (Tr. 20-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments.

(Tr. 62). He: (1) could not crawl or climb ropes, scaffolds, or ladders; (2) could frequently climb ramps and stairs, balance, stoop, kneel and crouch; (3) his ability to reach overhead and lift overhead would be limited; and (4) he could have limited exposure to temperature extremes, vibration, fumes, dust, and chemicals. (Tr. 62). The VE responded that a person with these restrictions could perform the plaintiff's past positions as a cashier and customer service clerk in a grocery store. (Id.). In the alternative, there were other jobs that the person could perform, and the VE proceeded to name them and give the numbers in which they existed in the state and national economies. (Tr. 62-3).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability due to back injuries suffered in an automobile accident while he was on his job delivering food. (Tr. 41-2, 97). While his treating physician, Dr. Mitchell Wicker, initially found tenderness on palpation of the cervical and thoracic spines, he noted that the plaintiff had a full range of motion, and all x-rays were normal. (Tr. 213-14). However, an MRI was obtained in June, 2001 which was interpreted by the radiologist as showing a herniated disc at the C5-6 level on the right (Tr. 204), and Dr. Wicker referred his patient to a neurosurgeon, Dr. Bean (Tr. 202). There are no records from Dr. Bean in the Court transcript, but another

treating source, Dr. Michael Lyons, stated in December 2001 that Dr. Bean had seen Mr. Myers on July 30, 2001; the neurosurgeon apparently had not characterized the MRI as showing a herniation at C5-6 but rather as a "disc bulge," with some osteophyte formation visible on plain cervical x-rays (Tr. 282) and had not believed any surgery was indicated. (Tr. 282). Bean had recommended physical therapy, and when the plaintiff completed this in September, 2001 he did attempt to return to work but stopped after three or four weeks due to pain, increasing fatigue, and inability to sleep. (Id.). After some more physical therapy, which was not completed (Tr. 217), Dr. Lyons felt that Mr. Myers had reached maximum medical improvement, and could not return to work at his former job since he was not able to do the driving, pushing, carrying, and lifting required for it. (Tr. 216). He reviewed a physical therapist's functional capacity evaluation done in December, 2001, which appeared to limit the plaintiff to sedentary level activities. (Tr. 220-3). He listed the plaintiff's restrictions as no lifting, pushing, or pulling over 15-20 pounds "except occasionally," although he needed to attend physical therapy for three months and be re-evaluated. (Id.). He assessed a five percent impairment of the whole person. (Id.).

Mr. Myers was subsequently evaluated by other sources, including Dr. Joseph Williams, a neurosurgeon who wished to perform a cervical diskectomy and fusion after diagnosing a definite disc herniation at C5-6, while admitting that the herniation was not apparent on a myelogram. (Tr. 230). By contrast, Mr. Myers was also

9

Myers

evaluated by neurosurgeons Joseph Tibbs and Scott Mirani who agreed that a herniation of the C5-6 disc was present, but felt that the plaintiff was not a surgical candidate and recommended further conservative treatment with physical therapy, rehabilitation, and trigger point injections. (Tr. 232-3). None of the sources suggested functional restrictions.

State agency physicians reviewed a portion of the record and concluded that the plaintiff could perform light level work with non-exertional restrictions similar to those found by the ALJ and given in the hypothetical question to the VE. (Tr. 235-42, 273-81). There is no physician-generated evidence for greater restriction in the transcript and, although Dr. Wicker prescribed antidepressants after describing his patient as quite depressed (e.g., Tr. 169, 180), the plaintiff only made one visit to a Comprehensive Care Center to see a counselor, and was not given any specific restrictions. (Tr. 298). State agency psychologists who reviewed a portion of the record concluded that the plaintiff did not have a "severe" mental impairment. (Tr. 243, 258).

Therefore, the plaintiff clearly failed to carry his burden of showing he could not return to past relevant work. The plaintiff's arguments on appeal that he meets the Commissioner's Listing of Impairment 1.04 must fail, since most examinations failed to show the sensory or reflex loss also required by the Listing. The plaintiff's allegations regarding pain were adequately discussed in the ALJ's decision, and the

Myers

ALJ's finding that the plaintiff was not entirely credible in that he claimed he could perform almost no daily activities yet had to take care of his parents who were totally disabled is a sufficient rationale for the credibility finding.

The decision will be affirmed.

This the ___20___ day of April, 2005.

*signature*
G. WIX UNTHANK
SENIOR JUDGE

11